UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ONSTREAM MEDIA CORPORATION, | § § § | No. 6:23-cv-00385-DAE |
| *Plaintiff*, | § § | |
| vs. | § § | |
| WEBCAST PLUS, LLC, *Defendant*. | § § § § | |

ORDER DENYING DEFENDANT'S MOTION FOR JUDGEMENT ON THE
<u>PLEADINGS</u>

Before the Court is a Motion for Judgement on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed on July 10, 2023, by Webcast Plus, LLC ("Defendant" or "Webcast") (Dkt. # 24.)  On August 14, 2023, Onstream Media Corporation ("Onstream") filed its Response.  (Dkt. # 30.)  On September 1, Webcast filed a reply.  (Dkt. # 32.)  The Court finds this matter suitable for disposition without a hearing.  After careful consideration of the filings and relevant case law, and for the reasons that follow, the Court **DENIES** Webcast's Motion for Judgement on the Pleadings.  (Dkt. # 24.)

1

BACKGROUND

I.    The Patents

On May 19, 2023, Onstream filed this lawsuit accusing Webcast of infringing U.S. Patent Nos. 9,161,068 (the "'068 Patent"), 9,467,728 (the "'728 Patent"), 10,038,930 (the "'930 Patent), 10,200,648 (the "'648 Patent"), 10,674,109 (the "'109 Patent"), 10,694,142 (the "'142 Patent"), 10,848,707 (the "'707 Patent"), 10,951,855 (the "'855 Patent"), and 11,128,833 (the "'833 Patent") (collectively the "Asserted Patents").

Onstream accuses Webcast's Video Products and Services of infringing at least Claim 1 of the '068 Patent; Claim 1 of the '728 Patent; Claim 1 of the '930 Patent; Claim 1 of the '648 Patent; Claim 1 of the '109 Patent; Claim 1 of the '142 Patent; Claim 1 of the '707 Patent; Claim 1 of the '855 Patent; and Claim 1 of the '833 Patent (collectively the "Asserted Claims"). (Compl. ¶¶ 79, 100, 115, 129, 143, 157 173, 188, 206.)

Onstream argues the Asserted Patents solve at least five different technical challenges, including: (1) making audio/video ("AV") content recording, storage, and delivery systems function more efficient; (2) lowering the required level of expertise for users of such systems; (3) avoiding the need to install and burden front end computer and electronic devices with additional software; (4) reducing or eliminating entirely the need for local memory storage devices and

other specialized recording equipment; and (5) reducing or eliminating other hardware and software requirements inherent in prior art audio and video recording and distribution systems, such as specialized software.  (See Compl. ¶¶ 29, 35, 41, 47, 53, 59, 65, 71, and 77.)

Onstream contends that while each of the Asserted Patents share the same specification, each patent claims different aspects/features of a novel communication system for streaming, recording, storing, and sharing audio/video ("AV") content.  (Dkt. # 30 at 5.)

Onstream argues the Asserted Patents allow for streaming and recording of AV content using only a web browser without requiring the installation or use of any recording software on a client device and the sharing of that recorded content in real time with other users/viewers.  (Id.)

Webcast argues the Asserted Claims are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of streaming and storing video over a network.  (Dkt. # 24 at 12.)  Webcast asserts that Claim 1, which it argues is representative, is a bare idea of collecting audio and video material on a first device, sending this material to a second device, and saving the material to a file.  (Id. at 13.)  Webcasts suggests "this algorithmic manipulation of generic data is a concept that is ineligible for patenting."  (Id.)  Furthermore, Webcast suggests Onstream does not describe how

any steps of the desired result, from being able to deliver and execute browser-executable code, to generating code to share the recorded material, is achieved. (Id. at 16.) Pursuant to these arguments, Webcast filed its Motion for Judgement on the Pleadings. (Dkt. # 24.)

## LEGAL STANDARD

I.  Rule 12(c)

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002). The Fifth Circuit applies the same standard to a motion under Rule 12(c) as it does for a motion under Rule 12(b)(6). Id., at 313 n.8; Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).

In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed

4

factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

II.     35 U.S.C. §101

To determine whether a patent is directed to ineligible subject matter, courts apply the two-step analysis set forth in Alice Corp. Pty. v. CLS Bank Int'l, 573 U.S. 208, 217 (2014).  First, the Court must "determine whether the claims at issue are directed to one of [the] patent-ineligible concepts," which includes abstract ideas.  Alice, 573 U.S. at 217.  The second step of the Alice test requires a court to "examine the elements of the claim [considered both individually and as an ordered combination] to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  Alice, 573 U.S. at 221 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 72, 78–79 (2012)).  This inventive concept must do more than simply recite "well-understood, routine, conventional activity."  Mayo, 566 U.S. at 79–80.

## DISCUSSSION

I.      Judgement on the Pleadings would be premature.

Federal Circuit jurisprudence limits a courts' authority to issue ineligibility determinations at a case's earliest stages.  See, e.g., MyMail, Ltd. V. ooVoo, LLC, 934 F.3d 1373, 1379 (Fed. Cir. 2019); Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) (Resolution of Section 101 motions is inappropriate until after claim construction).

6

In <u>Aatrix Software, Inc. v. Green Shades Software, Inc.</u>, the Federal Circuit acknowledged how factual issues undergird both <u>Alice</u> steps. 882 F.3d 1121 (Fed. Cir. 2018).  And because a court considering a Rule 12(c) motion must accept a complaint's factual allegations as true, there is a presumption against early ineligibility determination.  See <u>Lormand v. U.S. Unwired, Inc.</u>, 565 F.3d 228, 232 (5th Cir. 2009) (describing presumptions favoring non-movants in this Circuit); <u>M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.</u>, 890 F.3d 995, 999 (Fed. Cir. 2018) ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.")

It is well established that patents are presumed valid. See <u>Microsoft Corp. v. i4i Ltd. P'ship</u>, 564 U.S. 91, 97 (2011).  Overcoming that presumption demands clear and convincing evidence, even in the eligibility context.  See <u>Cellspin Soft, Inc. v. Fitbit, Inc.</u>, 927 F.3d 1306, 1319 (Fed. Cir. 2019).  Indeed, any fact "pertinent to the invalidity conclusion must be proven by clear and convincing evidence." <u>Berkheimer v. HP Inc.</u>, 881 F.3d 1360, 1368 (Fed. Cir. 2018);  <u>Mirror Imaging</u>, 2022 WL 229363, at *4.

Fact discovery and expert reports are often necessary to ensure that courts do not "prematurely" rule on eligibility.  <u>Verna IPHoldings v. AlertMedia</u>,

7

No. 21-cv-422, slip op. at 9 (W.D. Tex. Feb. 2, 2022); Match Grp. v. Bumble Trading, No. 6:18-cv-80, slip op. at 12 (W.D. Tex. Dec. 18, 2018).

Courts across the federal judiciary have also found that it is inefficient to attempt to resolve §101 motions at such an early stage where the parties do not agree that the claims are representative. See, e.g., Commvault Systems, Inc. v. Rubrik Inc., No. 20-534-MN, D.I. 38 (D. Del. Feb. 10, 2021) (denying motion involving 70 claims because little meaningful analysis was conducted to show representativeness); Neustar, Inc. v. Prove, Inc., No. 20-1633-MN, D.I. 24 (D. Del. Apr. 29, 2021) (denying motion involving 145 claims due to lack of representativeness); Roku, Inc. v. Almondnet, Inc., No., 21-1035-MN (D. Del. May 10, 2022) (denying motion involving 60 claims because of no representativeness); Diogenes Limited v. DraftKings, Inc., No. 21-1695-MN-CJB, 623 F.Supp.3d 423, Dkt. 46 at 9-10 (D. Del. July 18, 2022) (cautioning that "one could not use one claim as a cudgel to eliminate 27 asserted claims across seven patents in the absence of any real substantive arguments in support.")  This is because a "finding that any of the other [asserted claims] survives a §101 challenge necessarily permeates and defeats [a] motion to dismiss as to all of the [asserted claims]." Mirror Imaging, LLC v. PNC Bank, N.A., No. 6-21-CV-00518, 2022 WL 229363, Dkt. No. 31, at 8 (W.D. Tex. Jan. 26, 2022) (emphasis added).

In this case, Onstream argues that treating Claim 1 of the '068 patent as representative of the approximately 230 claims across the nine Asserted Patents would be inappropriate.  (Dkt. # 30 at 9.)  Onstream argues that Claim 1 of the '068 patent is not representative of all Asserted Claims.  The Court agrees to the extent that such a debate cautions against dismissing the claims at such an early stage.

Indeed, there are potential key differences in the Asserted Claims that may impact the Section 101 analysis.  For instance, "browser independent recording application" of Claim 1 of the '068 patent may be different from "platform independent web application" as used in Claim 1 of the '728 patent.  As Onstream noted, these are two different claim terms contained in different patents and have been construed by this court in different ways.  See <u>Onstream Media Corporation v. Facebook, Inc.</u>, 20-cv-00214, Dkt. 64, Claim Construction Order, at 1, (W.D. Tex. May 26, 2021).  This difference can signify that Claim 1 may not be representative.

Similarly, the '068 patent's "browser independent recording application" may not be the same as the claims of the '855 patent (e.g., claim 1) which recites the use of a real time messaging protocol based "stream number [that is delivered from the host back end to user front end each time a user seeks to] initiate secure streaming" of AV content.  (Dkt. # 30 at 11.)  Like the previous

example, the '855 phrase may be of a different concept than "browser independent," and the scope of the claim could benefit from claim construction.

Onstream makes a persuasive argument that the phrase "stream number to initiate secure streaming of digital audio and digital video material" cannot be construed in the same way the term "browser independent" is construed (i.e., "capable of running on any standard internet browser.") (Dkt. # 30 at 11.) This would mean that the claims of the '855 patent are not representative of claim 1 of the '068 patent.

Webcast asserts Onstream carries the burden to prove that claim construction is necessary and "must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." (Dkt. # 32 a 5–6.) (citing Trinity Info Media, LLC v. Covalent, Inc., 72 F.4th 1355, 1361 (Fed. Cir. 2023) (emphasis added).

Webcast argues that Onstream fails in arguing that Claim 1 of the '068 Patent is not representative. Indeed, Webcast asserts that numerosity and minute differences among the claims are no impediments to deciding patent eligibility if all the claims are directed to the same abstract idea. (Dkt. # 32 at 6.) (citing Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc., 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017). Webcast argues that

Onstream misunderstands the law in arguing that representativeness is a matter of whether some claims differ in scope or include additional limitations. Rather, the question is whether all of the claims are directed to the same abstract idea and whether the claims add an inventive concept to transform the abstract idea into a patentable subject matter. (Id.) (citing Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Webcast points to the fact that the Asserted Patents attempt to solve the same problems and have the same specification. (Id. at 7.)

However, as Onstream notes, the reason Webcast argues the patents are abstract is because the nine Asserted Patents share the same specification. However, the proper analysis should focus on the claims and not the content of the patent specification. ChargePoint, Inc. v. SemaConnect, Inc., 920 F.3d 759, 766 (Fed. Cir. 2019).

Ultimately, Onstream has satisfied its burden in pleading that both parties would benefit from claim construction. See Dkt. # 30 at 12 (discussing the possibility of whether Claim 1 of the '068 patent is representative of Claim 62 of the '068 patent and expecting Webcast would construe these terms as a mean-plus-function.)

At this early stage, the Court does not find it prudent to determine representative claims without claim construction. Luminati Networks Ltd. v. Teso

11

LT, UAB, 2:19-CV-00395-JRG, 2020 WL 6803256, *3 (E.D. Tex. July 15, 2020) (denying a motion to dismiss on the basis that the §101 analysis would benefit from claim construction).  Even without claim construction, the Court would benefit from fact discovery and expert reports, which are also often necessary to ensure that courts do not "prematurely" rule on eligibility.  Verna IPHoldings v. AlertMedia, No. 6:21-cv-422, slip op. at 9 (W.D. Tex. Feb. 2, 2022).  The Court should note that Onstream will face a higher bar in demonstrating the Asserted Patent's ultimate validity on Section 101 grounds as the case progresses.

## CONCLUSION

The aforementioned discussion underscores the potential value of claim construction and development of facts that may inform the Section 101 analysis.

Therefore, the Court finds no need to continue its analysis of the Alice test and **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED**

**DATED:** Austin, Texas, February 7, 2024.

_____
David Alan Ezra
Senior United States District Judge